**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

Received
2020 JUN 29 AM 9:05
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| LARISA THOMPSON | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | Case: 2:20-cv-00466 |
| v. | : | Assigned To : Pead, Dustin B. |
| | : | Assign. Date : 6/29/2020 |
| LITTLE AMERICA HOTEL CO., | : | Description: Thompson v. Little America Hotel |
| | : | |
| Defendant. | : | Judge |

COMES NOW Larisa Thompson (hereinafter "Ms. Thompson"), Plaintiff herein, complains of Defendant Little America Hotel Co. (hereinafter referred to as "Little America"), demands trial by jury, and as and for causes of action, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Larisa Thompson is an individual who is a citizen of the United States and a resident of the State of Utah and of Salt Lake County.

2. Defendant Little America Hotel Co. is a business entity which does business in the State of Utah. At all times relevant hereto, Little America Hotel Co. (hereinafter "Defendant" or "Little America" or "the Hotel") employed 15 or more employees and was an "employer", within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

3. The Court has subject matter jurisdiction of this case pursuant to federal question. Plaintiff alleges Defendant took adverse action against her, in violations of Title VII, which provides that it is unlawful to discriminate against an employee in her employment on the basis of her race and national origin and to retaliate against an employee for engaging in protected activity.

4. Plaintiff, by and through his counsel, David J. Holdsworth, brings this civil action against the Defendant alleging violations of Title VII, as amended, which provide that it is unlawful to discriminate against an employee in her employment on the basis of her race and national origin and to retaliate against an employee for engaging in protected activity.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in the State of Utah, Little America Hotel employed Ms. Thompson in the State of Utah; all of the employment practices alleged herein occurred

within the State of Utah; and the relevant employment records are maintained in the State of Utah.

6. Plaintiff Larissa Thompson files this Complaint against the defendant alleging violations of title VII, which provide that it is unlawful to discriminate against an employee in her employment on the basis of her race, and national origin, and to retaliate against an employee for engaging in protected activity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On August 31, 2018, plaintiff filed a Charge of Discrimination with the Utah Antidiscrimination Labor Division ("UALD") of the Utah Labor Commission against Little America, in which she alleged that Little America had discriminated against her based on her race and national origin.

8. Plaintiff filed her Charge of Discrimination within 180 days from the last date of the alleged harm.

9. The Court may consider for its determination all events that occurred between March 1, 2018, the 180-day jurisdictional mark prior to filing, and August 31, 2018, the date of filing. The Court may treat all other events occurring prior to March 1, 2018 as being untimely for purposes of relief. However, the Court may give weight to evidence of such events for evidentiary purposes.

10. Plaintiff eventually appealed her Charge to the Utah Labor Commission's Adjudication Division. In the course of that administrative process, Defendant took Plaintiff's deposition and then filed a motion for summary judgment. Plaintiff prepared a response to said motion for summary judgment, which she attaches hereto as it Exhibit 2.

11. Plaintiff ultimately decided to withdraw her claim from the Utah Labor Commission's state administrative process and seek a jury trial in federal court. The EEOC has recently issued her a right to sue letter and she is filing the instant case in accordance with said right to sue letter, a copy of which is attached hereto as Ex 1.

12. Plaintiff has satisfied all jurisdictional requirements, as required by Title VII, as amended.

## STATEMENT OF FACTS

13. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 12 above as if alleged in full herein.

14. Plaintiff is Caucasian (East European) and from Russia.

15. In September 2000, Little America hired Plaintiff to work as a server for banquets. She received promotions to cashmere and then captain. She then moved to work in the hotel shops and began working in the shops as a salesperson.

Later, Little America promoted Plaintiff to the position of Retail Supervisor. Plaintiff worked in the fine gifts gift shop in the Hotel.

16. The Retail Supervisor's duties included the following: (1) "maintains a friendly, cheerful and courteous demeanor at all times;" (2) "create a friendly environment for employees". Defendant's rules of conduct stated: "Our employees will refrain from… insubordination, willful disregard, or disrespect toward a supervisor or representative of management or failure to obey or perform work;" and lists as a consequence, "the right to [impose] discipline, including discharge, any employee who fails to abide by these rules of conduct".

17. Prior to 2016 (when Kari Lund became Plaintiff's supervisor), Plaintiff was a high-performing employee. She developed productive relationships with many coworkers and had many regular customers.

18. In 2016, Kari Lund ("Lund") became Plaintiff's supervisor.

19. Plaintiff alleges that, thereafter, Lund developed a strong personal dislike for and animosity towards Plaintiff.

20. Plaintiff alleges Lund developed this dislike and animosity towards Plaintiff because Plaintiff was from a foreign country outside of the United States, was from Russia and spoke English with a Russian accent.

21. Plaintiff alleges that, because of this dislike/animosity, Lund treated Plaintiff poorly and adversely, compared with how Lund treated favored coworkers, such as Peggy Kounalis ("Kounalis"), Jovita Rojas ("Rojas"), and Jorge Rowe ("Rowe").

22. Plaintiff alleges this dislike/animosity of Lund towards Plaintiff caused Lund to: (a) scrutinize Plaintiff's work differently than how she evaluated the work of other employees; (b) to criticize Plaintiff's work frequently; and (c) to decide to build a case and a paper trail against Plaintiff so as to eventually to bring about the ending of Plaintiff's employment with Little America.

23. For example, Plaintiff alleges that, from 2016 until April 2018, Lund frequently told Plaintiff that she could not speak Russian in the gift shop. Plaintiff alleges that Lund allowed others to speak other non-English languages in the gift shop, but would not let Plaintiff speak Russian, even to Russian speaking customers.

24. As another example, Plaintiff alleges that, prior to Lund, Previous managers had allowed Plaintiff to put sales in her own name (that is, if she helped a customer and made a sale, she got credit for the sale), but when Lund became Plaintiff Foster supervisor, Lund adopted a rule (which was never formally announced or put in writing) that Plaintiff was not allowed to make or put sales in her own name.

6

25. Plaintiff alleges that, soon after Lund became Plaintiff's supervisor, she started a campaign to discipline and eventually terminate Plaintiff's employment. For example, on April 2, 2016, Lund allegedly prepared a written warning for Plaintiff for allegedly falsely accusing a fellow salesperson, Rojas, of taking Plaintiff's commission on the sale of a dress to a customer. Plaintiff denies this accusation.

26. On July 20, 2016, Lund allegedly prepared a written warning for Plaintiff for, as a supervisor, allegedly taking a commission from Kounalis. Plaintiff denies that she took the commission at issue from Kounalis and alleges that a customer had come to her and asked Plaintiff to sell the item in question to the customer.

27. On December 15, 2016, Lund allegedly prepared a written warning for Plaintiff for allegedly telling a customer to only come into the shop when Plaintiff was there (so that Plaintiff could have the customer's sale). Plaintiff denies that this was in any way improper and was a standard practice for salespersons in the gift shop who had relationships with certain customers.

28. On December 22, 2016, Lund allegedly prepared a written warning for Plaintiff for allegedly taking a sale from Kounalis. Plaintiff denies taking the sale at issue from Kounalis.

29. On February 2, 2017, Lund prepared a written warning for Plaintiff for allegedly taking a sale from Kounalis. Plaintiff alleges that she did nothing wrong in taking the commission on the sale at issue, and that, afterwards, when Kounalis screamed profanities at her, Lund did not discipline Kounalis.

30. On February 12, 2017, manager Scott French ("French") wrote up Plaintiff for the same incident which had generated Lund's February 2, 2017 a write up, asserting that Plaintiff was not to take a commission on a sale she made as a supervisor unless she was the salesperson scheduled to be in the store as a salesperson.

31. On February 27, 2017, Lund issued Plaintiff a written warning for allegedly taking a commission on a sale when she was not the scheduled salesperson.

32. On March 3, 2017, French and Lund met with Plaintiff to inform her that she should not take commission when she was not the scheduled salesperson.

33. After the March 3, 2017 meeting, Plaintiff went to the office of Chief Executive Officer, Bruce Ferry ("Ferry"), to complain that Lund was treating her poorly and adversely, in that, among other things, Lund was not allowing her to take a commission on a sale she made when she was not the scheduled salesperson. Ferry told her to address this concern with _____ Sokia ("Sokia"). Plaintiff then went to Sokia and made much the same complaint. Sokia did not reverse the decision of French and Lund.

34. On March 7, 2017, Lund issued Plaintiff a written warning for going to Ferry and making a complaint.

35. On October 20, 2017, Lund allegedly prepared a written warning to Plaintiff for allegedly accusing Kounalis of not reporting theft.

36. On February 14, 2018, Lund allegedly prepared a written warning for Plaintiff for allegedly parking in the wrong lot and talking on a cell phone and telling a coworker to not inform Lund that she had been talking on a cell phone. Plaintiff alleges that she did nothing which violated Defendant's rules. Plaintiff occasionally had to talk to her agent parents who lived in Russia about various health - related concerns. Plaintiff had discussed this need with French and obtained his permission to use her cell phone for such a purpose.

37. Plaintiff alleges that, in approximately mid-February 2018, she complained to Mr. Sokia that Lund was treating her disparately and adversely. Plaintiff complained that Lund's poor and adverse treatment of her was creating a hostile work environment in which she had to work. Plaintiff was afraid to link the poor and adverse treatment and hostile work environment to her being Brush and, being she was afraid Lund would retaliate against her.

38. Plaintiff alleges that, in February 2018, she applied for a promotion at the Grand America Hotel. Plaintiff alleges that the decision on who was

to fill the position was delayed and not made until May 2018, by which time Little America had already fired her.

39. Plaintiff alleges that of the approximate 23 write-ups Lund has prepared relating to Plaintiff, Lund had already given Plaintiff only three of the write-ups.

40. On March 16, 2018, Lund allegedly prepared a written warning for Plaintiff for allegedly telling a fellow supervisor, Rowe, "You better not stab me in the back, because I have a lot on you". Plaintiff denies making such a statement to Mr. Rowe. She alleges she said, "I hope you will not backstab me", but asserts that she did not threaten Rowe in any way. The write-up stated that, although Plaintiff was a supervisor and was to supervise the employees under her charge, she was not to criticize or correct any employee.

41. Thereafter, Plaintiff wrote Rowe two letters. Plaintiff alleges that she wrote such letters to "patch things up" with Rowe. Rowe alerted Defendant to the letters Plaintiff had written to him.

42. On April 25, 2018, Little America terminated Plaintiff's employment for alleged insubordination for allegedly counseling and criticizing coworkers after being told repeatedly not to do so. Plaintiff denies engaging in any act of insubordination.

43. Plaintiff alleges this reason for the termination of her long-tenured employment was false and pretextual. Plaintiff provides a further explanation as to why she is alleging Little America discriminated against her and retaliated against her and why she is alleging Little America's reason for the termination was false and pretextual in a personal statement, attached hereto as Exhibit 1. *See also* Plaintiff's draft response to the motion for summary judgment, attached hereto as Exhibit 2.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT DISCRIMINATED AGAINST PLAINTIFF
### BASED ON RACE AND NATIONAL ORIGIN

44. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 43 above as if alleged in full herein.

45. In order to state a prima facie case of discrimination based on race and national origin, Plaintiff must allege facts which establish, or tend to establish, that: (1) she is a member of a protected class(es); (2) she was qualified for the position she held; (3) Defendant subjected her to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of the protected characteristic(s). *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1975).

46. Plaintiff is Caucasian and from Russia.

47. Having worked successfully for Little America for many years, Plaintiff was qualified for the position she held.

48. Plaintiff's allegations satisfy the first two elements in the prima facie case.

49. An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment was significantly different responsibilities, or a decision causing a significant change in benefits". *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (*internal quotation omitted*). A written warning may or may not be sufficient, in and of itself, to constitute an adverse action; such may be actionable if it "affects a significant change in the plaintiff's employment status". *Haynes v. Level 3 Communications, L.L.C.,* 456 F.3d 1215, 1224 (10th Cir. 2006).

50. Plaintiff alleges Defendant subjected her to the following adverse employment actions: (1) on March 16, 2018, Defendant issued her a written warning; (2) on April 6, 2018, Defendant issued her a written warning. Plaintiff alleges these two warnings caused a significant change in employment. Plaintiff also alleges Defendant subjected her to an additional and ultimate adverse employment action on April 25, 2018, when Defendant terminated her employment.

51. Plaintiff's allegations satisfy the third element in the prima facie case.

52. The final element in her prima facie case requires Plaintiff to allege facts and cithercumstances surrounding the adverse action(s) which give rise to an inference of discrimination on the basis of the protected characteristic(s). Potential circumstances that give rise to an inference of discrimination include: (1) disparate treatment which, but for the employee's protected trait, would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

53. Here, Plaintiff alleges that Lund treated her differently and more harshly than she did other similarly situated employees for engaging in substantially similar actions.

54. Plaintiff also alleges that Lund treated non-Russian employees more favorably than she treated her. Plaintiff alleges that Lund treated other employees, who were not Russian, and who were in similar positions and who had performance problems, more favorably than she treated Plaintiff.

55. Moreover, Plaintiff alleges that her race and national origin actually motivated Lund's decision to terminate Plaintiff's employment in that her

national origin generated Lund's personal animosity towards her, which motivated Lund to build a case against her and create a paper trail to justify terminating her employment.

56. Plaintiff alleges that several circumstances support an inference that Lund fired her because of her race and national origin, including (1) Lund told her not to speak Russian while working, while permitting other employees to speak Spanish; (2) Lund implemented or enforced rules on obtaining credit for sales which had a disparately adverse impact on Plaintiff; and (3) Lund prepared several written warnings for Plaintiff to make it appear as though Plaintiff did not get along with coworkers or customers and was insubordinate, but never issued those to Plaintiff.

57. As such, Plaintiff's allegations satisfy the fourth element in the prima facie case.

58. Plaintiff's allegations state a claim of discrimination on the basis of race and national origin.

## SECOND CAUSE OF ACTION
## DEFENDANT RETALIATED AGAINST PLAINTIFF

59. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 58 above as if alleged in full herein.

60. In order to state a prima facie case of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) she engaged in protected

opposition to discrimination; (2) Defendant subjected her to an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action. *See, generally, Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (*citing Burlington Northern & Santa Fe Railway Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006))).

61. A protected activity is one in which the individual has participated in a charge of discrimination under the Act or otherwise opposed a practice prohibited by the Act. *See Hinds v. Sprint/United Management, Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008) (" Although no magic words are required, to qualify as protected opposition, the employee must convey to the employer or his or her concern that the employer has engaged in any practice made unlawful by [anti-discrimination statutes]").

62. Here, Plaintiff alleges that she engaged in protected activity on February 15, 2018, when she complained to Mr. Sokia that Lund had told her not to speak Russian and that Lunn was favoring other employees over her because Lund did not like her because she was from a foreign country.

63. Plaintiff alleges that, soon after Plaintiff engaged in such protected activity, Lund became aware of the same and quickly took adverse actions against her which led up to and culminated in the termination of her employment.

64. Plaintiff alleges a cause and effect causal connection exists between her engaging in protected activity and Lund's adverse actions in issuing her write-ups and in terminating her employment.

65. Plaintiff alleges such a causal connection, based on several facts and circumstances, including the temporal proximity between her protected activity and the adverse action and, based on the multiplicity of adverse actions Lund took against her, which supports an inference of a motive and deliberate plan to bring about the ending of Plaintiff's employment with Little America.

66. Plaintiff's allegations satisfy the third element in the prima facie case.

67. Plaintiff's allegations state a claim of retaliation.

## DAMAGES

68. Ms. Thompson alleges Little America's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, additional medical expenses, damages to her physical and emotional health, damages to her employability, financial stress and emotional distress.

## RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically and Order and Judgment:

1. Declaring that Defendant discriminated against Ms. Thompson on the basis of her race and/or national origin, in violation of Title VII;

2. Awarding Ms. Thompson "make whole" relief, awarding Ms. Thompson her lost wages and loss benefits, from the time Defendant terminated Ms. Thompson's employment until Ms. Thompson secures comparable employment or for a period of five years, whichever occurs first;

3. Awarding Ms. Thompson her reasonable attorney's fees and costs;

4. Awarding Ms. Thompson such other relief as may be just and equitable.

DATED this 29 day of June, 2020.

/s/ David J. Holdsworth
David J. Holdsworth
*Attorney for Plaintiff*