**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| LARISA THOMPSON | : | **FIRST AMENDED COMPLAINT** |
|---|---|---|
|  | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| LITTLE AMERICA HOTEL CO., | : | Civil No. 2:20-cv-00466-DBP |
|  | : |  |
| Defendant. | : | Magistrate Judge Dustin B. Pead |

COMES NOW Larisa Thompson (hereinafter "Ms. Thompson"), Plaintiff herein, complains of Defendant Little America Hotel Co. (hereinafter referred to as "Little America"), demands trial by jury, and as and for causes of action, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Larisa Thompson is an individual who is a citizen of the United States and a resident of the State of Utah and of Salt Lake County.

2. Defendant Little America Hotel Co. is a business entity which does business in the State of Utah. At all times relevant hereto, Little America Hotel Co. (hereinafter "Defendant" or "Little America" or "the Hotel") employed 15 or more employees and was an "employer", within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

3. The Court has subject matter jurisdiction of this case pursuant to federal question. Plaintiff alleges Defendant discriminated against her and took adverse action against her, in violation of Title VII, which provides that it is unlawful to discriminate against an employee in her employment on the basis of her race and national origin, and to retaliate against an employee for engaging in protected activity.

4. Plaintiff, by and through his counsel, David J. Holdsworth, brings this civil action against the Defendant alleging violations of Title VII, as amended, which provide that it is unlawful to discriminate against an employee in her race and national origin, and to retaliate against an employee for engaging in protected activity.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in the State of Utah, Little America Hotel employed Ms. Thompson in the State of Utah; all of the employment practices alleged herein occurred within the State of Utah; and the relevant employment records are maintained in the State of Utah.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On August 31, 2018, Plaintiff filed a Charge of Discrimination with the Utah Antidiscrimination Labor Division ("UALD") of the Utah Labor Commission against Little America, in which she alleged that Little America had discriminated against her based on her race and national origin.

7. Plaintiff filed her Charge of Discrimination within 180/300 days from the last date of the alleged harm.

8. The Court may consider for its determination all events that occurred between approximately November 1, 2017, the 300-day jurisdictional mark prior to filing, March 1, 2018, the 180-day jurisdictional mark prior to filing, and August 31, 2018, the date of filing. The Court may treat all other events occurring prior to November 1, 2017/March 1, 2018 as being untimely for purposes of relief. However, the Court may give weight to evidence of such prior events for evidentiary purposes.

9. Plaintiff eventually appealed her Charge to the Utah Labor Commission's Adjudication Division. In the course of that administrative process, Defendant took Plaintiff's deposition and then filed a motion for summary judgment. Plaintiff prepared a response to said motion for summary judgment, which she attaches hereto as it Exhibit 2.

10. Plaintiff ultimately decided to withdraw her claim from the Utah Labor Commission's state administrative process and seek a jury trial in federal court. The EEOC has recently issued her a right to sue letter and she is filing the instant case in accordance with said right to sue letter, a copy of which is attached hereto as Exhibit 1.

11. Plaintiff has satisfied all jurisdictional requirements, as required by Title VII, as amended.

## STATEMENT OF FACTS

12. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 12 above as if alleged in full herein.

13. Plaintiff is Caucasian (East European) and from Russia.

14. In September 2000, Little America hired Plaintiff to work as a server for banquets. She received promotions to cashier and then captain. She then moved to work in the hotel shops and began working in the shops as a salesperson. Later, Little America promoted Plaintiff to the position of Retail Supervisor. Plaintiff last worked in the fine gifts shop in Little America.

15. The Retail Supervisor's duties included the following: (1) "maintains a friendly, cheerful and courteous demeanor at all times;" (2) "create[s] a friendly environment for employees".

16. Prior to 2016 (when Kari Lund became Plaintiff's supervisor), Plaintiff was a high-performing employee. She developed productive relationships with many coworkers and had many regular customers. Several members of management, including her former manager, and several customers wrote letters to or about Plaintiff praising her performance and complimenting her on her service. Plaintiff never had a single issue or dispute with her previous management.

17. In 2016, Kari Lund ("Lund") became Plaintiff's supervisor.

18. Plaintiff alleges that, thereafter, Lund developed a strong personal dislike for and animosity towards Plaintiff. Lund expressed and manifested this dislike and animosity by treating Plaintiff in a short, brusque and hostile manner. Soon after Lund became Plaintiff's manager, Lund told Plaintiff that she (Lund) would "rip her off".

19. Plaintiff alleges Lund developed this dislike and animosity towards Plaintiff because Plaintiff was originally from a foreign country, was not native to the United States, was from Russia, English was a second language and spoke English with a Russian accent.

20. Plaintiff alleges that, because of this dislike/animosity, Lund treated Plaintiff poorly and adversely, compared with how Lund treated other coworkers, such as Brenda Carpenter, B.A. Regenass, and coworkers Lund especially

favored, such as Peggy Kounalis ("Kounalis"), Jovita Rojas ("Rojas"), and Jorge Rowe ("Rowe"). Plaintiff alleges Lund also treated a fellow coworker, Tory Georgieva, poorly and adversely because she was from Bulgaria and spoke English (her 2nd or 3rd language) with an accent. For example, Plaintiff alleges Kari Lund gave Ms. Georgieva less favorable shifts.

21. Plaintiff alleges this dislike/animosity of Lund towards Plaintiff caused Lund: (a) to scrutinize Plaintiff's work differently than how she evaluated the work of other employees; (b) to criticize Plaintiff's work frequently; (c) to cut Plaintiff's hours; (d) to not give Plaintiff a pay raise when she gave pay raises to other employees; and (e) to decide to build a case and a paper trail against Plaintiff so as to eventually to bring about the ending of Plaintiff's employment with Little America.

22. For example, Plaintiff alleges that, from 2016 until April 2018, Lund frequently told Plaintiff that she could not speak Russian in the gift shop. Plaintiff alleges that Lund allowed others to speak other non-English languages in the gift shop, such as Spanish, but would not let Plaintiff speak Russian. This made it uncomfortable for Plaintiff to provide services to customers/guests from Russia and other countries who spoke Russian and to whom Plaintiff wished to speak in her native language because Lund had instructed Plaintiff to not speak Russian.

23. As another example, Plaintiff alleges that, prior to Lund becoming her manager, previous managers had allowed Plaintiff to put sales in her own name (that is, if she helped a customer and made a sale, she got credit for the sale), but when Lund became Plaintiff's supervisor, Lund developed a policy (which was never formally announced or put in writing) that, as a retail supervisor, Plaintiff was not allowed to make or put sales in her own name.

24. Plaintiff alleges that, soon after Lund became Plaintiff's manager, Lund started a campaign to discipline Plaintiff so as to eventually be able to terminate Plaintiff's employment. For example, on April 2, 2016, Lund allegedly prepared a written warning for Plaintiff for allegedly falsely accusing a fellow salesperson, Rojas, of taking Plaintiff's commission on the sale of a dress to a customer. Plaintiff denies this accusation.

25. On July 20, 2016, Lund allegedly prepared a written warning for Plaintiff for, as a supervisor, allegedly taking a commission from Kounalis. Plaintiff denies that she took the commission at issue from Kounalis and alleges that a customer had come to her and asked Plaintiff to sell the item in question to the customer. Later, after Lund raised a concern with this sale, Plaintiff offered Kounalis the opportunity to take the sale so as to avoid a problem with Lund and Kounalis.

26. On December 15, 2016, Lund allegedly prepared a written warning for Plaintiff for Plaintiff allegedly telling a customer to only come into the shop when Plaintiff was there (so that Plaintiff could have the customer's sale). Plaintiff denies that this was in any way improper and was a standard practice for salespersons in the gift shop who had relationships with certain customers.

27. On December 22, 2016, Lund allegedly prepared a written warning for Plaintiff for allegedly taking credit for a sale.

28. On or about February 4, 2017, Lund prepared a written warning for Plaintiff for allegedly taking a sale from Kounalis. Plaintiff alleges that she did nothing wrong in taking the commission on the sale at issue, and that, afterwards, when Kounalis screamed profanities at Plaintiff, Lund did not discipline Kounalis.

29. On February 12, 2017, manager Scott French ("French") wrote up Plaintiff for the same incident which had generated Lund's February 4, 2017 write up, asserting that Plaintiff was not to take a commission on a sale she made as a supervisor unless she was the salesperson scheduled to be in the store as a salesperson.

30. On February 27, 2017, Lund issued Plaintiff a written warning for allegedly taking a commission on a sale when she was not the scheduled salesperson.

31. On March 3, 2017, French and Lund met with Plaintiff to inform her that she should not take commission when she was not the scheduled salesperson.

This was the first time French and Lund had informed Plaintiff of Lund's policy described above being a rule.

36. After the March 3, 2017 meeting, Plaintiff went to the office of Chief Executive Officer, Bruce Ferry ("Ferry"), to complain that Lund had a hostile attitude toward Plaintiff, and was treating her poorly and adversely. Ferry told Plaintiff to address her concerns with the head of Human Resources, Karl Sokia ("Sokia"). Plaintiff then went to Sokia and made much the same complaint, including those concerns listed above in this paragraph and not giving Plaintiff the same opportunities to work and earn as Lund was giving other employees. Sokia did not address Plaintiff's concerns.

33. On March 7, 2017, Lund retaliated against Plaintiff by issuing Plaintiff a written warning for going to Ferry and making a complaint to Ferry.

34. Part of Plaintiff's duties as a supervisor was to report everything that went on in the shop to her supervisor. On October 20, 2017, Lund allegedly prepared a written warning to Plaintiff for allegedly accusing Kounalis of not reporting theft in the store.

35. On February 14, 2018, Lund allegedly prepared a written warning for Plaintiff for allegedly parking her car in the wrong parking lot and talking on a cell phone in the storage room (not out on the sales floor). Plaintiff alleges that, in doing

9

so, she did nothing which violated Defendant's rules. Plaintiff occasionally had to talk to her aging parents who lived in Russia about various health-related concerns. Plaintiff had discussed this need with French and obtained his permission to use her cell phone for such a purpose.

36. Plaintiff alleges that, in approximately mid-February 2018, she went again to Karl Sokia and complained to Mr. Sokia that Lund was treating her disparately and adversely. Plaintiff complained to Mr. Sokia that Lund's poor and adverse treatment of her was creating a hostile work environment in which she had to work. Plaintiff was afraid to directly tell Mr. Sokia the link between Lund's poor and adverse treatment of her and hostile work environment to her being Russian, because she was afraid that, if she did so, Lund would retaliate against her even more.

37. Plaintiff alleges that, in February 2018, she applied for a promotion at the Grand America Hotel. Plaintiff alleges she went through an excellent interview and she was optimistic about being selected for the promotion. Plaintiff alleges that the decision on who was to fill the position was delayed and not made until May 2018, by which time Lund had already fired her.

38. Plaintiff alleges that of the approximate 23 write-ups Lund had allegedly prepared relating to Plaintiff, Lund gave Plaintiff only three of such written

write-ups at or close to the time specified in the write-ups. Plaintiff alleges Lund did not give her any other written write-ups.

39. On March 16, 2018, Lund allegedly prepared a written warning for Plaintiff for allegedly telling a fellow supervisor, Rowe, "You better not stab me in the back, because I have a lot on you". Plaintiff denies making such a statement to Mr. Rowe. She alleges she said, "I hope you will not backstab me", but asserts that she did not threaten Rowe in any way. The write-up stated that, although Plaintiff was a supervisor and was to supervise the employees under her charge, she was not to criticize or correct any employee.

40. Thereafter, Plaintiff wrote Rowe two letters. Plaintiff alleges that she wrote such letters to "patch things up" with Rowe. Rowe alerted Lund to the fact that Plaintiff had written letters to him.

41. On April 25, 2018, Lund terminated Plaintiff's employment for alleged insubordination for allegedly counseling and criticizing coworkers after allegedly being told repeatedly not to do so. Plaintiff denies engaging in any act of insubordination and alleges she was performing her job as supervisor.

42. Plaintiff alleges this reason for the termination of her long-tenured employment was false and pretextual. Plaintiff alleges Lund gave false, inaccurate, and incomplete information to upper management to persuade upper management to go

along with Lund's plan to terminate Plaintiff's employment. Plaintiff provides a further explanation as to why she is alleging Little America discriminated against her and retaliated against her and why she is alleging Little America's reason for the termination was false and pretextual in a personal statement, in Plaintiff's draft response to the motion for summary judgment, attached hereto as Exhibit 2.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT DISCRIMINATED AGAINST PLAINTIFF
### BASED ON RACE AND NATIONAL ORIGIN —
### DISPARATE TREATMENT

43. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 42 above as if alleged in full herein.

44. In order to state a prima facie case of discrimination based on race and national origin, Plaintiff must allege facts which establish, or tend to establish, that: (1) she is a member of a protected class(es); (2) she was qualified for the position she held; (3) Defendant subjected her to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of the protected characteristic(s). *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1975).

45. Plaintiff is Caucasian and from Russia.

46. Having worked successfully for Little America for approximately 18 years, Plaintiff was qualified for the position she held.

47. Plaintiff's allegations satisfy the first two elements in the prima facie case.

48. An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment was significantly different responsibilities, or a decision causing a significant change in benefits". *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (*internal quotation omitted*). A written warning may or may not be sufficient, in and of itself, to constitute an adverse action; but such may be actionable if it "affects a significant change in the plaintiff's employment status". *Haynes v. Level 3 Communications, L.L.C.,* 456 F.3d 1215, 1224 (10th Cir. 2006).

49. Plaintiff alleges Defendant subjected her to several adverse employment actions, including the following: (1) on March 16, 2018, Defendant issued her a written warning; (2) on April 6, 2018, Defendant issued her a written warning. Plaintiff alleges these two warnings caused a significant change in her employment status. Plaintiff also alleges Defendant subjected her to an additional and ultimate adverse employment action on April 25, 2018, when Defendant terminated her employment.

50. Plaintiff's allegations satisfy the third element in the prima facie case.

51. The final element in her prima facie case requires Plaintiff to allege or refer to facts and other circumstances surrounding the adverse action(s) which give rise to an inference of discrimination on the basis of the protected characteristic(s). Potential circumstances that give rise to an inference of discrimination include: (1) disparate treatment which, but for the employee's protected trait, would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

52. Here, Plaintiff alleges that Lund treated her differently and more harshly than she did other similarly situated employees for engaging in substantially similar actions.

53. Plaintiff also alleges that Lund treated non-Russian employees generally more favorably than she treated Plaintiff. Plaintiff alleges that Lund treated other employees, who were not Russian, and who were in similar positions and who had performance problems, more favorably than she treated Plaintiff.

54. Moreover, Plaintiff alleges that her race and national origin actually motivated Lund's decision to terminate Plaintiff's employment in that her race

and national origin generated Lund's personal animosity towards her, which motivated Lund to build a case against her and create a paper trail to justify terminating her employment.

57. Plaintiff alleges that several circumstances support an inference that Lund treated her adversely, disciplined her and fired her because of her race and national origin, including (1) Plaintiff had never had any problems with any prior manager; (2) Lund told her not to speak Russian while working, while permitting other employees to speak Spanish or other languages while working; (3) Lund implemented or enforced rules on obtaining credit for sales which she knew would have a disparately adverse impact on Plaintiff; and (4) Lund prepared several written warnings for Plaintiff to make it appear as though Plaintiff did not get along with coworkers or customers and was insubordinate, but never issued those to Plaintiff.

56. As such, Plaintiff's allegations satisfy the fourth element in the prima facie case.

57. Plaintiff's allegations state a claim of discrimination on the basis of race and national origin.

## SECOND CAUSE OF ACTION
## DEFENDANT RETALIATED AGAINST PLAINTIFF

58. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 57 above as if alleged in full herein.

59. In order to state a prima facie case of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) Defendant subjected her to an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action. *See, generally, Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (*citing Burlington Northern & Santa Fe Railway Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006))).

60. A protected activity is one in which the individual has participated in a charge of discrimination under the antidiscrimination statutes or otherwise opposed a practice prohibited by the antidiscrimination statutes. *See Hinds v. Sprint/United Management, Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008) (" Although no magic words are required, to qualify as protected opposition, the employee must convey to the employer or his or her concern that the employer has engaged in any practice made unlawful by [anti-discrimination statutes]").

61. Here, Plaintiff alleges that she engaged in protected activity on or about March 3, 2017 and on February 15, 2018, when she complained that Lund had told her not to speak Russian and that Lund was favoring other employees over her because Lund did not like her because she was from a foreign country.

62. Plaintiff's allegations satisfy the first element in the prima facie case of retaliation.

63. Plaintiff alleges that, soon after Plaintiff engaged in such protected activity, Lund became aware of the same and quickly took adverse actions against Plaintiff which led up to and culminated in Lund terminating her employment. the

64. Plaintiff's allegations satisfy the second element in the prima facie case of retaliation.

65. Plaintiff alleges a cause and effect causal connection exists between her engaging in protected activity and Lund's adverse actions in issuing her write-ups and in terminating her employment.

66. Plaintiff alleges such a causal connection exists, based on several facts and circumstances, including the temporal proximity between her protected activity and the adverse actions and, based on the multiplicity of adverse actions Lund took against her, which supports an inference of a motive and deliberate plan to bring about the ending of Plaintiff's employment with Little America.

67. Plaintiff's allegations satisfy the third element in the prima facie case of retaliation.

68. Plaintiff's allegations state a claim of retaliation.

**DAMAGES**

69. Ms. Thompson alleges Little America's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, additional medical expenses, damages to her physical and emotional health, damages to her employability, financial stress and emotional distress.

### RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically and Order and Judgment:

1. Declaring that Defendant discriminated against Ms. Thompson on the basis of her race and/or national origin and retaliated against her, in violation of Title VII;

2. Awarding Ms. Thompson "make whole" relief, awarding Ms. Thompson her lost wages and loss benefits, from the time Defendant terminated Ms. Thompson's employment until Ms. Thompson secures comparable employment or for a period of five years, whichever occurs first;

3. Awarding Ms. Thompson her reasonable attorney's fees and costs;

4. Awarding Ms. Thompson such other relief as may be just and equitable.

DATED this ___ day of September , 2020.

                               */s/ David J. Holdsworth*
                               David J. Holdsworth
                               *Attorney for Plaintiff*

## VERIFICATION

Larisa Thompson, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing FIRST AMENDED COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.

         */s/ Larisa Thompson*
         Larisa Thompson

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of _____, 20___.

         _____
         NOTARY PUBLIC

MY COMMISSION EXPIRES:     RESIDING AT: _____

         _____