THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LARISA THOMPSON,<br><br>            Plaintiff,<br><br>v.<br><br>LITTLE AMERICA HOTEL CO.,<br><br>            Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [21] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00466-DBB<br><br>District Judge David Barlow |

Plaintiff was terminated from her employment with Little America Hotel. Plaintiff contends she was terminated in violation of Title VII.[1] Before the court is Defendant's Motion for Summary Judgment (Motion).[2] Having considered the briefing and the relevant law, the court concludes the Motion may be resolved without oral argument.[3] For the reasons discussed below, the court grants the Motion.

## BACKGROUND[4]

Plaintiff started working at Little America in 2000 as a server and eventually transferred to the fine gift store.[5] She was terminated in April 2018.[6] Until early 2016, Plaintiff reported to

---

[1] 42 U.S.C. § 2000e *et seq*.
[2] Defendant's Motion for Summary Judgment (Motion), ECF No. 21, filed August 16, 2021.
[3] *See* DUCivR 7-1(g).
[4] In opposing the Motion, Plaintiff "disputes" some of the facts. However, the responses are not disputes but instead attempts to offer an explanation of the facts presented. *See, e.g.*, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Opposition) at ¶¶ 17–19, 21–38, 42, 25–46, ECF No. 25, filed September 27, 2021. These responses do not create a dispute of fact.
[5] Larisa Thompson Deposition at 10:3–19, Exhibit A to Motion, ECF No. 21-2.
[6] 04/24/18 Performance Coaching, Ex. 31 to Mark Mundel Declaration, ECF No. 21-3.

Diane Friar, the Retail Department Manager.[7] In various job performance evaluations, Friar noted various problems between Plaintiff and her coworkers and other negative work behaviors including parking in prohibited areas, speaking a foreign language (Russian) when not permitted under company policy, being on the phone constantly, hanging up on Friar, and breaking various rules.[8]

In 2016, Friar retired, and Kari Lund replaced her as Retail Department Manager.[9] In April 2016, Lund disciplined Plaintiff for parking on the Little America lot.[10] An April 7, 2016 Performance Coaching document noted that Plaintiff "feels an entitlement that the rules [d]o not apply to her."[11] Under the "Looking Forward" section, Lund noted "HER FOLLOWING THE RULES not only as a[n] employee but she is a key person in my area."[12] On or about September 13, 2016, another supervisor had to complete a task for which Plaintiff was responsible because it "was not going to get done."[13] The supervisor sent an email to Lund informing her of the details.[14]

In early 2017, Little America's General Manager, Mark Mundel, and Hotel Manager, Scott French, became involved in "coaching" Plaintiff.[15] Lund noted that she felt it best "to have

---

[7] Thompson Depo. at 12:12–16; 64:12–15; 67:2–5.
[8] *See* 01/21/10 Work Progress Review, Ex. 1 to Mundel Declaration; 09/03/10 Email, Ex. 2 to Mundel Declaration; 02/11/11 Work Progress Review, Ex. 3 to Mundel Declaration; 01/09/12 Work Progress Review, Ex. 4 to Mundel Declaration; 06/14/12 Note, Ex. 5 to Mundel Declaration.
[9] Thompson Depo. at 64:12–15; 67:2–5; Mundel Declaration at ¶ 8.
[10] Thompson Depo. at 116:15–17, 117:2–5.
[11] 04/07/16 Performance Coaching, Ex. 11 to Mundel Declaration. Plaintiff agreed that this was "a fair criticism." Thompson Depo. at 118:7–11.
[12] 04/07/16 Performance Coaching, Ex. 11 to Mundel Declaration.
[13] Email from George Rowe to Kari Lund, Ex. 27 to Mundel Declaration; *see also* 09/14/16 Performance Coaching, Ex. 14 to Mundel Declaration.
[14] Email from George Rowe to Kari Lund, Ex. 27 to Mundel Declaration.
[15] Mundel Declaration at ¶ 10.

another party present" when talking with Plaintiff.[16] On February 16, 2017, a Performance Coaching document described an incident between Plaintiff and a coworker, Peggy Kounalis, when Plaintiff did not give Kounalis the commission on a sale in violation of company rule.[17] The incident was discussed with Lund and the other managers and the Human Resources Director.[18] On or about February 26, 2017, Plaintiff took another sales commission from a coworker.[19] On March 3, 2017, French and Lund met with Plaintiff "to discuss some concerns in the gift shop, including who should get commissions for sales and when."[20] After the meeting, Plaintiff went to the CEO's office to share her disagreement.[21] The CEO directed Plaintiff to speak with Human Resources Director, Carl Sokia.[22] Plaintiff then went to the owner of Little America's house and asked the owner's nurse for the owner's cell phone number to discuss the matter.[23] French and Lund "made it clear" that it was not appropriate for Plaintiff to "take departmental issues to the CEO, and certainly not to the owner" and it was "very out of line to go to the owner's house."[24]

In February 2018, Plaintiff again violated a company rule by parking on Little America grounds.[25] Plaintiff refused to discuss the issue and cell-phone usage at work with Lund.[26] On or about March 2, 2018, George Rowe, another supervisor, gave a note to Lund recounting how

---

[16] 02/04/17 Performance Coaching, Ex. 18 to Mundel Declaration.
[17] 02/17/17 Performance Coaching, Ex. 19 to Mundel Declaration.
[18] *Id.*
[19] 02/27/17 Performance Coaching, Ex. 20 to Mundel Declaration.
[20] Mundel Declaration at ¶ 13; *see also* 03/07/17 Performance Coaching, Ex. 21 to Mundel Declaration.
[21] 03/07/17 Performance Coaching, Ex. 21 to Mundel Declaration.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] Thompson Depo. at 232:12–14; 232:25–233:4; 02/14/18 Performance Coaching, Ex. 24 to Mundel Declaration.
[26] Thompson Depo. at 236:18–24; Performance Coaching 02/14/18, Ex. 24 to Mundel Declaration.

Plaintiff threatened him after he helped her fix a computer issue.[27] It was noted in a Performance Coaching document that Rowe felt "threatened and uncomfortable."[28] On March 16, 2018, Plaintiff, Lund, Mundel, and French met together to discuss the interaction with Rowe.[29] Plaintiff denied making the comments and thought Rowe "had misunderstood her comments."[30] The Performance Coaching document dated March 16, 2018 also noted "multiple issues" involving Plaintiff and interactions with other employees.[31] Mundel asked Plaintiff "to not correct or criticize any employee" and that Plaintiff should go to Lund if there were any problems that needed to be addressed.[32]

On April 6, 2018, Mundel received another complaint about Plaintiff from an employee.[33] Lund and French met with Plaintiff and documented the notes in a Performance Coaching document dated April 6, 2018. They noted that "the stress that other co-workers are feeling when [Plaintiff is] around is not good and has to change somehow."[34] The note stated that "This is probably the 5th or 6th conversation Scott and I have had regarding similar situations with [Plaintiff] and it is becoming very challenging to manage her interactions with the team."[35]

---

[27] 03/02/18 Note, Ex. 28 to Mundel Declaration.
[28] 03/26/18 Performance Coaching, Ex. 29 to Mundel Declaration. The document is dated 03/02/18 but the signature date is 03/26/18.
[29] Mundel Declaration at ¶ 7; Thompson Depo. at 259:12–260:12; 03/16/18 Performance Coaching, Ex. 25 to Mundel Declaration.
[30] 03/16/18 Performance Coaching, Ex. 25 to Mundel Declaration.
[31] *Id.*
[32] *Id.*
[33] Mundel Declaration at ¶ 18.
[34] 04/06/18 Performance Coaching, Ex. 26 to Mundel Declaration.
[35] *Id.*

During the discussion with French and Lund, Plaintiff stated that she was being "harassed" by them.[36]

On April 12, 2018, Plaintiff wrote a note to Rowe regarding his interactions with a customer and indicating that "If this type of behavior continues I will have to report you to higher management."[37] After receiving this note, Rowe wrote a letter to management that he was contemplating finding other employment because of the "toxic nature of an unhappy employee."[38] The note indicated that Plaintiff was making "it difficult to work in an upbeat manner" and Rowe could "not accept that any employee should have to tolerate behavior from employees that make[] the environment unsettling."[39]

Mundel felt that Plaintiff had directly and deliberately disobeyed his instructions and was concerned that Plaintiff was significantly hurting the morale and efficiency of the Retail Department.[40] Mundel decided it was in Little America's best interest to terminate Plaintiff's employment.[41] Plaintiff's termination form provides the reason for her termination:

> After receiving counsel multiple times to not engage employees in a manner of giving direction, Larisa has once again sought out [Rowe] and given him two letters criticizing him for his conduct with customers as well as using his cell phone while on duty. [Rowe] is not a subordinate of [Plaintiff]; she never had any business giving him direction—but especially not after the previous counsel she has received.[42]

---

[36] *Id.*
[37] Note from Thompson to Rowe, Exhibit D to Mundel Declaration; *see also* Thompson Depo. at 324:20–325:19; Mundel Declaration at ¶ 20.
[38] 04/12/18 Rowe Note, Ex. 30 to Mundel Declaration.
[39] *Id.*
[40] Mundel Declaration at ¶¶ 23–24.
[41] *Id.* at ¶ 25.
[42] 04/24/18 Performance Coaching, Ex. 31 to Mundel Declaration; Mundel Declaration at ¶ 27.

Additional notes were attached detailing Plaintiff's failure to follow instructions from Lund, French, and Mundel.[43] The note concludes that "[b]ased on her repetitive and constant insubordination, we will terminate her employment with Little America effective April 25, 2018."[44]

Plaintiff does not dispute that Mundel made the decision to terminate her employment and that Lund and Kounalis were not involved in the decision.[45] Plaintiff does not dispute that she never had "any negative interactions" with Mundel.[46] Nor does Plaintiff dispute that she has no knowledge of anyone at Little America saying anything derogatory about Russia or Russians.[47] Lund and Kounalis are the only two Little America employees Plaintiff felt harbored "some type of discriminatory animus against [her] national origin."[48] Other than in the meeting telling her she was terminated, Plaintiff did not report any alleged discrimination to Little America management or any other official agency.[49]

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50] Plaintiff's first claim is for national origin discrimination. On a motion for summary judgment, a plaintiff who has been terminated and is relying on indirect evidence of national origin

---

[43] 04/24/18 Performance Coaching, Ex. 31 to Mundel Declaration.
[44] *Id.*
[45] Opposition Response to ¶ 43.
[46] *Id.* at ¶ 44.
[47] *Id.* at ¶ 41; Thompson Depo. at 128:11–130:4.
[48] Thompson Depo. at 130:5–8, 285:9–286:2; Opposition Response to ¶ 42.
[49] Thompson Depo. at 291:22–294:13, 286, 296; Opposition Response to ¶ 45.
[50] Fed. R. Civ. P. 56(a).

discrimination "must first establish a prima facie case by showing (1) she belongs to a protected class, (2) she was qualified to perform her job, (3) she was terminated, and (4) the circumstances surrounding her termination give rise to an inference of discrimination."[51] If Plaintiff relies on circumstantial evidence to show discriminatory intent, the court employs the *McDonnell Douglas* burden-shifting analysis.[52] If Plaintiff meets her burden, then the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for" termination.[53] If Defendant does so, the burden "shifts again to the plaintiff to show that the defendant's explanation was merely pretextual."[54]

Plaintiff's second claim is for retaliation. "To state a prima facie case of retaliation, [Plaintiff] must show that: (1) she engaged in a protected activity; (2) [Defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[55]

## DISCUSSION

### I. Defendant is Entitled to Judgment on Plaintiff's Discrimination Claim.

The parties acknowledge that the only dispute as to whether Plaintiff has established a prima facie case is if there is evidence that gives rise to an inference of discrimination.[56] "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse

---

[51] *Baltazar v. Shinseki*, 485 Fed. App'x 941, 946 (10th Cir. 2012) (citing *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005)).
[52] *Bennett v. Windstream Commc'n, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).
[53] *Id.* at 1265.
[54] *Id.* at 1266.
[55] *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (citation omitted).
[56] *See* Opposition at 39; Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment (Reply) at 2, ECF No. 30, filed October 26, 2021.

employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"[57] And there must "be a logical connection between each element of the prima facie case and the inference of discrimination."[58]

Plaintiff has cited to her deposition testimony detailing several events where she felt like she was treated differently.[59] She has not pointed to any other evidentiary support that this was discrimination based on her national origin. The court does not find that the circumstances identified by Plaintiff "give rise to an inference of unlawful discrimination." Indeed, the proposed connection between those events and Plaintiff's national origin is not at all apparent. However, for the purpose of this analysis, the court will assume that Plaintiff has established a prima facie case of discrimination and engage in the *McDonnell Douglas*[60] burden-shifting analysis. Plaintiff's discrimination claim fails this test.

Defendant has provided legitimate, non-discriminatory reasons for Plaintiff's termination. Mundel has testified, and the coaching documents support that, Mundel was "deeply concerned" about Plaintiff's actions and that she failed to follow his instruction to not "engage employees in a manner of giving direction."[61] Plaintiff had a long and varied record over the years of violating company rules. In short, the record contains ample evidence of legitimate non-discriminatory reasons for termination, including insubordination.[62]

---

[57] *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (citation omitted).
[58] *Id.* (citation omitted).
[59] *See, e.g.*, Opposition at 40–41 (citing Thompson Depo. at 93, 106, 134, 168–70, 211, 242, 264, 266, 268, 271, 277–78, 300–01, 311, 319, 328).
[60] 411 U.S. 792 (1973).
[61] Mundel Declaration at ¶¶ 24, 27.
[62] *See* Mundel Declaration at ¶ 27; *see also* Performance Coaching exhibits attached to Mundel Declaration.

Plaintiff argues those reasons are pretextual because Lund did not give her any of "some twenty-one disciplinary notices" Lund created, except for three notices in March 2017.[63] The reference to the twenty-one disciplinary notices appears to be the Performance Coaching documents beginning January 26, 2016 after Lund became the manager. It is true that many of these documents do not appear to be signed by Plaintiff.[64] However, many of the documents reference conversations Lund (and sometimes other managers) had with Plaintiff regarding the events in the document.[65] Plaintiff either has not disputed that these meetings or conversations occurred as described[66] or has testified that she remembers participating in the meetings.[67] At other times, Plaintiff was presented the notice and did not want to sign it.[68] The record shows that Plaintiff was informed many times of her negative behavior and repeated breaking of company rules. The evidence does not support Plaintiff's claim for pretext.

Additionally, the undisputed evidence shows that Mundel was the sole decisionmaker, and he was concerned about Plaintiff's ability to work with others and follow directions. Based

---

[63] Opposition at 43 (citing Thompson Depo. at 185); *see also* Thompson Depo. at 184, 224.
[64] *See* Exs. 8–26, 29, 31 to Mundel Declaration.
[65] *See* Exs. 8–11, 14–15, 17, 19, 21, 23, 25–26, 29 to Mundel Declaration.
[66] As previously noted, Plaintiff often disputes "in part" the facts presented but offers only a further explanation of her actions. She does not dispute the underlying facts established in the paragraphs which reference various Performance Coaching documents. *See* Opposition Responses to ¶¶ 17–19 (referencing Exs. 11 and 27 to Mundel Declaration), 22–24 (referencing Exs. 19–21 to Mundel Declaration), 26–32 (referencing Exs. 24–26, 28 to Mundel Declaration).
[67] *See* Thompson Depo. at 254 (testifying she remembered the meeting described in the document which is Ex. 29 to Mundel Declaration); *id.* at 259 (testifying she remembered the meeting described in the document which is Ex. 25 to Mundel Declaration).
[68] *See* 03/31/17 2016 Performance Synopsis, Ex. 22 to Mundel Declaration ("Did not want to sign"); 02/14/18 Performance Coaching, Ex. 24 to Mundel Declaration (noting that Plaintiff "refused to discuss both issues" with Lund and Plaintiff told Lund that "she would respond to the issues in writing"); Thompson Depo. at 190–91, 236–237 (testifying she had a conversation with Lund about the 2018 parking incident but refused to discuss it with Lund).

on those concerns, he terminated Plaintiff's employment. Because the undisputed evidence does not support a claim of discrimination, Defendant is entitled to judgment on this claim.

## II. Defendant is Entitled to Judgment on Plaintiff's Retaliation Claim.

"To state a prima facie case of retaliation, [Plaintiff] must show that: (1) she engaged in a protected activity; (2) [Defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[69]

Plaintiff makes two conflicting arguments. First, she does not dispute that she did not report any discrimination.[70] Instead she indicates she was "afraid to report the situation" for fear of getting fired.[71] This suggests that she did not engage in a protected activity because she did not report any alleged wrongdoing, and so her retaliation claim fails at the first step.

But Plaintiff also argues that she complained of discrimination to Mundel at the time she was terminated.[72] The Supreme Court has established that Title VII retaliation claims are subject to the but-for causation standard and must show "that the unlawful termination would not have occurred in the absence of the alleged wrongful actions or actions of the employer."[73] So, to meet the standard a plaintiff "must show that the decisionmakers took action against him out of a desire to retaliate for his formal discrimination complaints."[74] Plaintiff cannot meet that test.

---

[69] *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (citation omitted).
[70] Opposition Response to ¶¶ 45, 46.
[71] *Id.*
[72] *Id.* at 45 (citing Thompson Depo. at 286, 295). An informal complaint to a superior can constitute a protected activity, but the other retaliation elements must still be met. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001).
[73] *Univ. of Texas Southwestern Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2010).
[74] *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019).

Plaintiff testified that when Mundel told her she was terminated, she said she had health issues and could not "handle these meetings anymore. This [is] harassment. This [is] discrimination."[75] Clearly, this provides no support for the claim that Mundel, as the decisionmaker, took action against her for reporting the alleged discrimination. The "report" to Mundel was *after* he informed Plaintiff that she was terminated. It cannot support a claim for retaliation since the alleged protected activity occurred after the adverse action and does not meet the appropriate causation standard.[76]

The record does not show that Plaintiff engaged in any protected activity, nor does it show any causal connection between the alleged reporting and her termination. Therefore, Defendant is entitled to judgment on Plaintiff's retaliation claim.

Regarding both the national origin discrimination claim and the retaliation claim, the record would not permit a reasonable jury to find on Plaintiff's behalf. As a result, Defendant is entitled to judgment in its favor.

## ORDER

For the reasons stated in this Memorandum Decision and Order, Defendant's Motion for Summary Judgment[77] is GRANTED.

---

[75] Thompson Depo. at 286:15–22.

[76] Plaintiff also cites a page of her deposition in which she references sending two letters to Carl Sokia in Defendant's HR department. Plaintiff does not detail the contents of the letters. More importantly, she does not discuss the letters in her Opposition, much less supply them. Accordingly, they do not form a basis for resisting Defendant's Motion for Summary Judgment.

[77] ECF No. 21.

Dated January 6, 2022.

BY THE COURT

David Barlow
United States District Judge